UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN HOWARD,

        Petitioner,                      Case Number 17-13269
                                                    Honorable David M. Lawson

v.

SHIRLEE HARRY,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    After Michigan prisoner Melvin Howard's first trial for criminal sexual conduct was terminated prematurely as a mistrial, a second jury found him guilty. He contended on direct appeal and now in a habeas corpus petition that his conviction violates the Double Jeopardy Clause. The state appellate court held that Howard impliedly consented to the mistrial and therefore denied relief on that and other claims that he raises here. Because the state courts did not contravene or unreasonably apply Supreme Court precedent, the petition for a writ of habeas corpus will be denied.

I.

    Howard had sexual intercourse with a woman at her friend's apartment in Ypsilanti, Michigan in July 2013. Howard said the sex was consensual, but the woman alleged that she was intoxicated by drugs and alcohol and sleeping at the time, and Howard's actions violated her. Howard was charged with third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d, and proceeded to trial. In its opinion on direct review of the ensuing conviction, the Michigan Court of Appeals described what happened:

A. THE FIRST TRIAL

On March 24, 2014, defendant's first trial began. After voir dire, the jury was sworn in and given preliminary instructions, and the parties gave opening statements. The jury then heard testimony from the victim and her friend who hosted the party. The victim's friend testified that she did not have a cell phone on the night of the incident and that someone other than herself or the victim purchased New Amsterdam vodka at Campus Corner. During her testimony, the victim's friend was belligerent and argumentative with the attorneys. At one point, the judge excused the jury so he could have an off-the-record discussion with the attorneys in his chambers. When he came back on the record, the judge expressed his displeasure with the witness's conduct and informed her that she would be held in contempt if she continued to argue with the attorneys and give evasive answers. After defense counsel cross-examined the witness, the judge questioned the witness about who purchased the alcohol and she repeatedly answered that she did not know. The judge then excused the jury and held a short off-the-record bench conference. Back on the record, the prosecutor stated the following concerning what the attorneys and judge had discussed in chambers and at the bench conference:

> A short while ago, we broke because the Court had some concerns about the answers [the witness] was giving. When we went back in chambers, we discussed that it was the Court's opinion that [the witness] was giving some answers that were not truthful. I stated to the Court that they didn't sound very good to me either. I was concerned about some of the answers that she was giving. However, what I could not say was that she was not testifying specifically on the stand in a manner that was different from what she had told me before. Therefore, I was not bringing it to the Court's attention that I believed that she was committing perjury or misleading the Court in any way. Was I concerned, and did I, quite frankly, have problems with the veracity of some of the answers that she was giving, yes, and I made that clear to the Court. However, I didn't feel, at that point, that I had specific information that she was committing perjury. And so we asked if we could reconvene. We spoke with her. We said knock it off, answer the questions, just be truthful. . . . And I think when she came back out here her demeanor was much more appropriate. There were some questions that were asked, both by [defense counsel] as well as the Court, and there were a couple of answers that were given with the last few minutes which concerned me. One of them was that [the witness] testified that somebody bought the alcohol at Campus Corner. . . . I am aware, through Officer Compton, who has been [a Ypsilanti] cop for over nine years, and . . . knows that city like the back of his hand, Campus Corner doesn't sell liquor. They sell beer. They don't [sell] liquor. Now, it's one thing if that isn't just an honest mistake, but I think, and I don't [want to] speak for the Court, but it did appear as if she was definitively answering that there was liquor that was bought at that store because she talked about they were drinking New

> Amsterdam . . . so that was one issue that I wanted to bring to the Court's attention as an officer of the court.
>
> The other thing that I wanted to bring to the Court's attention, as an officer of the court, is [the witness] testified that she didn't have a phone. In fact, she went over that on multiple occasions. She also testified that she didn't have a cell phone, she didn't have a house phone, and that she communicated through the [internet] or something like that. We are, and this is the other thing that I needed to bring to the attention of the Court, we are in possession of — well, for one thing, in the informational section of the police report under [the witness's name], there is a phone number. Another bit of information that ties in with that, though, is we are in possession of some phone records which we use to look at a different aspect of this case which I raised with the Court before the trial even started, and there are some notations on there which were, quite frankly, written on there by [the victim] where she wrote down that that was [the witness's] number, and she wrote that down [on] a few occasions. We didn't track the whole week or two weeks or whatever it was, but we tracked [the] day or the hours surrounding this event. Now, the number that's on there, quite frankly, is one digit off, but it's a digit in the middle of the number, and it certainly makes me comfortable to say that we're talking about the same numbers.
>
> I want to bring that to the Court's attention because I think the Court needs to know that. Now, I will say this: Whatever the Court does, whatever action the Court takes, obviously, we will respect, and I understand that the Court has concerns as do I. I guess my only question is whether or not this impacts on the complaining witness's testimony. That would be the only thing that I would ask the Court to consider before you make the ruling.
>
> Now, I understand that the jury has been given information, but the only thing that I would ask the Court to consider is . . . whether this problematic testimony necessarily impacts the testimony from [the victim].

After the prosecutor's statement, the trial court declared a mistrial, stating the following:

> My concern, frankly, is having this issue, which is an important issue, go to the jury with the status of this testimony . . . and this witness. Frankly, I — let me back up. I thank you, [prosecutor] for bringing it to the Court's attention. You are an ethical attorney, and you always have been in this court, and I respect that. Nothing that happened here is — not only is not the fault of the Prosecutor or the police, but — they have both been forthcoming with the Court. My concern is that the status of this testimony taints this jury to the degree that I don't think it's fair either to [defendant] or, frankly, to [the victim's] complaint to allow this matter to go to the jury on this basis.

> I'm going to declare a mistrial in this matter.

B. THE SECOND TRIAL

> Defendant was retried on June 30 and July 1, 2014. The problematic witness did not testify at the second trial. The victim testified that defendant engaged in sexual intercourse with her without her consent while she was heavily intoxicated. Defendant argued that the sex was consensual and that the victim was lying because she had a boyfriend at the time of the incident. The jury found defendant guilty as charged . . . .

*People v. Howard*, No. 324388, 2016 WL 902142, *1-2 (Mich. Ct. App. March 8, 2016).

Howard was sentenced to a prison term of five to 15 years. On direct appeal, he raised the same claims that he asserts here in his habeas corpus petition. The Michigan Court of Appeals affirmed his conviction and the Michigan Supreme Court denied leave to appeal. *Id*. at *3-7; *People v. Howard*, 500 Mich. 1012, 895 N.W.2d 924 (2017).

In his petition filed under 28 U.S.C. § 2254, Howard argues that he never consented to the mistrial, which was not necessary, and therefore his second trial violated the Double Jeopardy Clause; the admission of evidence regarding his identity and prior police contacts denied him a fair trial; and his trial counsel rendered constitutionally ineffective assistance.

The warden filed an answer to the petition raising the defense of procedural default. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address the procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518,

525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."

*Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

A.

Howard seeks relief on the ground that his retrial after the declaration of a mistrial violated the Double Jeopardy Clause of the Fifth Amendment. The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction and protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969); *Ohio v. Johnson,* 467 U.S. 493, 497 (1984). The Double Jeopardy Clause also bars the State from making repeated attempts to convict an individual for an alleged offense, *United States v. Dinitz,* 424 U.S. 600, 606 (1976), and protects a defendant's right to have his trial completed by a particular tribunal, *Arizona v. Washington,* 434 U.S. 497, 503-04 (1978). Jeopardy attaches in a criminal trial once the jury is impaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 38 (1978). The parties agree with these basic tenets.

The parties also agree that when a criminal proceeding is terminated before a resolution on the merits, retrial is not automatically barred. However, once jeopardy attaches, prosecution of a defendant before a jury other than the original jury may proceed only if the defendant requests or consents to a mistrial or if there is a "manifest necessity" for a mistrial. *Arizona,* 434 U.S. at 505; *United States v. Perez,* 22 U.S. (9 Wheat) 579, 580 (1824); *Watkins v. Kassulke,* 90 F.3d 138, 141 (6th Cir. 1996).

> There is good reason for such a rule.
>
> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona,* 434 U.S. at 503-05 (footnotes omitted).

The record in this case presents several reasons to question the manifest necessity of declaring a mistrial. The trial judge expressed concern over the impact that the misbehaving witness may have had on the prosecution's case — concern that was shared by the trial prosecutor. Declaring a mistrial to repair the damage to the prosecution's case can hardly be justified as a manifest necessity. Plainly such action would trench upon "a defendant's valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689 (1949); *see also Green v. United States,* 355 U.S. 184, 187-88 (1957) ("The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.").

But the defense may also have harbored some apprehension as well, since the mistrial declaration was discussed thoroughly in chambers and on the record and no objection was forthcoming. And that is the issue presented here: was the state courts' determination that the petitioner impliedly consented to the mistrial reasonable, and did it contravene or unreasonably apply Supreme Court precedent?

The Michigan Court of Appeals held that the petitioner's consent to the mistrial could be inferred under the totality of the circumstances and therefore no double jeopardy violation occurred upon his retrial on the same charge. The court explained:

> In this case, the circumstances surrounding the trial court's declaration of a mistrial permit us to conclude that defendant impliedly consented to the mistrial, even if the consent was in the form of silence. The record reveals that the trial court held two off-the-record discussions with the attorneys, one in chambers and one at a bench conference, during which the court expressed concerns regarding the witness's demeanor, the veracity of her testimony, and its impact on the trial. Immediately after the bench conference, the trial court dismissed the jury and asked the prosecutor to summarize the discussions that took place in chambers and at the bench conference. The prosecutor indicated that as a result of the discussions, he expected the trial court to take action, stating, "Whatever the Court does, whatever action the Court takes, obviously, we will respect, and I understand that the Court has concerns as do I." Thereafter, the trial court declared a mistrial.
>
> Considering the above circumstances, defense counsel was aware of the trial court's concerns and the possibility that the trial court might declare a mistrial. Yet, there is no evidence that defendant or his counsel expressed any disapproval of or opposition to a mistrial declaration, despite having had the opportunity to do so during either of the off-the-record discussions, the prosecutor's summary of the discussions, or the trial court's remarks surrounding its declaration of a mistrial. In this context, we believe that defendant's consent to the declaration of a mistrial can be inferred, and retrial was not barred by the constitutional right against double jeopardy.

*Howard*, 2016 WL 902142 at *5 (footnote omitted). The court did not address the question of manifest necessity, since consent was sufficient to vitiate the petitioner's double jeopardy claim.

The Sixth Circuit has held that "a defendant's failure to object to a mistrial implies consent thereto only if the sum of the surrounding circumstances positively indicates this silence was tantamount to consent." *United States v. Gantley,* 172 F.3d 422, 429 (6th Cir. 1999). In that case, consent was found after the trial judge "(1) heard [the defendant]'s counsel's suggestion that [the trial judge]'s own reaction caused [the defendant] incurable prejudice; (2) considered the possibility of an alternative course of action; (3) decided there was no viable alternative to a

declaration of a mistrial; and (4) essentially invited an objection by asking counsel if there was 'anything else' to address". *Ibid.*

The record here does not reveal such a fulsome discussion. But *Gantly* does not set the standard for cases under AEDPA's highly deferential standard of review. *See Renico v. Lett*, 559 U.S. 7 at 779 (holding that circuit court decisions do "not constitute 'clearly established Federal law, as determined by the Supreme Court,' so any failure to apply that decision cannot independently authorize habeas relief under AEDPA") (quoting 28 U.S.C. § 2254(d)(1)). And the record adequately demonstrates that the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record indicates that the parties and the trial court discussed the problems with the witness's testimony in chambers and during a bench conference at trial. The parties were aware of the judge's concerns about the veracity of the witness's testimony and its potential impact on the fairness of the trial for the prosecution and the defense. The parties also had ample opportunity to comment on the matter and advocate for potential curative measures. Neither the petitioner nor defense counsel raised an objection to the grant of a mistrial on the record, either before or after it occurred. The Michigan Court of Appeals reasonably determined that the petitioner impliedly consented to the grant of the mistrial. Consequently, no double jeopardy violation occurred when he was subject to retrial on the same charge. Habeas relief is not warranted on this claim.

B.

The petitioner also asserts that he is entitled to habeas relief because the trial court erred by admitting testimony from the victim and the police concerning his identity and previous law enforcement contacts. He argued on direct appeal that the victim's testimony about how she identified him from law enforcement photos of his tattoo was unduly prejudicial because identity

was not an issue, the testimony was potentially confusing, and the testimony suggested that he had been arrested before. The petitioner also objected to a police officer's testimony that he identified the petitioner using a system with photographs of people who had been arrested previously.

The state court of appeals reviewed these claims for plain error. It determined that the testimony suggesting that the petitioner had been arrested previously was improper but held that the error was harmless. The court explained:

> Although defendant is correct that testimony indicating that he had previously been arrested should not have been admitted, he cannot demonstrate that the challenged testimony affected his substantial rights. The testimony suggesting that defendant had previously been arrested was extremely fleeting, and the prosecutor presented substantial evidence from which the jury could reasonably infer defendant's guilt. For instance, the prosecutor presented testimony that defendant put his clothes on and fled the scene immediately after the victim became aware of the assault. Further, the victim reported the incident to the police shortly after it occurred, which contradicted defendant's theory that the victim was lying because she had a boyfriend who would have been mad at her for cheating. By bringing the incident to the attention of the police, the victim essentially assured that her boyfriend would become aware of the sex. Accordingly, defendant has not shown that introduction of the evidence affected the outcome of the lower court proceedings.

*Howard*, 2016 WL 902142 at *6 (citing *People v. Coleman*, 210 Mich. App. 1, 4; 532 N.W.2d 885, 887 (1995) (holding that evidence of flight is probative to indicate consciousness of guilt)).

Trial court errors in the application of state evidentiary law generally will not support a request for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

So it is here. The state court held not only that the error did not deprive the petitioner of a fair trial, but that it was harmless. That determination was neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).

In this case, any error in referencing the petitioner's earlier law enforcement contacts was harmless. Those references were brief, and the prosecution did not draw attention to the fact that the petitioner had been arrested before. Additionally, the prosecution presented significant evidence of the petitioner's guilt of third-degree criminal sexual conduct, particularly the victim's testimony about the petitioner's sexually assaultive actions, the petitioner's flight from the scene, and the fact that the victim reported the incident to the police shortly after it occurred. Those facts render harmless any error admitting the disputed evidence. The evidence did not have a substantial and injurious effect or influence on the jury's verdict.

## C.

The petitioner argues that his trial counsel was ineffective by failing to move for a dismissal on double jeopardy grounds before his second trial and by failing to object to the admission of the evidence referencing his identity and prior law enforcement contacts during that trial.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15

(2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

Citing the *Strickland* standard, the Michigan Court of Appeals considered the petitioner's claims on direct appeal and denied relief. With respect to trial counsel's conduct in not moving for dismissal on double jeopardy grounds before retrial, the court explained that because

> defendant impliedly consented to the trial court's declaration of a mistrial, . . . the mistrial declaration was not improper and retrial did not violate defendant's constitutional right against double jeopardy. Defendant does not challenge his trial counsel's decision not to object to the trial court's declaration of mistrial in the first trial, but rather challenges only his counsel's failure "to move the trial court to dismiss his reprosecution after the improper declaration of a mistrial in the first trial." Any motion by defense counsel to dismiss defendant's second trial on double jeopardy grounds would have been meritless in light of defendant's implied consent to the mistrial declaration. Defense counsel cannot be deemed ineffective for failing to raise a meritless objection. Accordingly, defendant has not shown that his trial counsel provided ineffective assistance in this regard.

*Howard*, 2016 WL 902142 at *6 (citing *People v. Thomas*, 260 Mich. App. 450, 457; 678 N.W.2d 631, 637 (2004)).

That decision was faithful to Supreme Court precedent. Certainly, defense counsel could have raised the double jeopardy argument before the second trial. But in hindsight, that argument was doomed to failure, because consent to a mistrial waives a double jeopardy objection to further proceedings. The state courts' determination that consent was given, although subject to reasonable differences, was sound. And as the court of appeals observed, citing its own precedent, counsel's performance cannot be deemed deficient by failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). The petitioner fails to show that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

The court of appeals relegated to trial strategy trial counsel's conduct withholding an objection to the references to the petitioner's prior law enforcement contacts.

> Defendant also argues that his trial counsel provided ineffective assistance by failing to object to the evidence or request a curative instruction. Again, effective assistance of counsel is presumed, and defendant bears the heavy burden of proving that his counsel's actions did not constitute sound trial strategy. In this case, counsel could have soundly chosen not to object and request a limiting instruction to avoid bringing further attention to the fleeting inferences that defendant previously had been arrested or had contact with law enforcement. Therefore, defendant has failed to demonstrate that his trial counsel provided ineffective assistance.

*Id*. at *7 (citing *People v. LeBlanc*, 465 Mich. 575, 578; 640 NW2d 246, 248 (2002)).

That holding did not contravene or unreasonably apply Supreme Court precedent. Trial counsel may have reasonably determined not to object to the victim's identification testimony and the police officer's arrest reference in order to avoid drawing attention to the petitioner's prior law enforcement contacts. Such conduct was a sound trial strategy that will not be second-guessed on habeas review. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012) (no ineffectiveness because counsel "may have . . . made a tactical choice not to provide curative jury instructions to avoid drawing further attention to the fact that the pictures were mug shots"); *Stamps v. Rees*, 834 F. 2d 1269, 1276 (6th Cir. 1987) (failure to request jury instruction on permissible use of prior convictions evidence did not constitute ineffective assistance "as it is quite evident that . . . counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them"). Moreover, the petitioner has not shown prejudice, since the references to previous law enforcement contact were brief and significant evidence of guilt was presented at trial. Habeas relief is not warranted on this claim.

### D.

Lastly, the petitioner seems to assert that he is entitled to habeas relief based upon perceived violations of Michigan law relative to several of the foregoing issues. However, violations of the

-14-

Michigan Constitution or other state law do not constitute grounds for relief under 28 U.S.C. § 2254. Referencing that statute, the Sixth Circuit explained that "[t]he phrase 'in violation of the Constitution or laws or treaties of the United States' has an equally straightforward meaning. A petitioner must claim that his custody violates federal law, not state law, not some other source of law." *Bailey v. Wainwright*, 951 F.3d 343, 346 (6th Cir. 2020) (citing *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam)).

### III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: November 19, 2020